IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

IN THE MATTER OF THE USE OF A
CELL-SITE SIMULATOR TO IDENTIFY
ANY ADDITIONAL CELLULAR
TELEPHONE DEVICES USED BY
DERRICK BRYANT

Case No. **1:18MJ-716**

**Filed Under Seal**

FILED
RICHARD W. NAGEL
CLERK OF COURT

2018 NOV 28 AM 9:20

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, David A. Zummach, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the identification of any additional cellular telephone devices used by Derrick BRYANT which is described in Attachment A.

2. I am a Special Agent with the U.S. Drug Enforcement Administration, and have been so employed since October 2015. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). I have been a law enforcement officer since June 25, 2009, spending three years with the United States Border Patrol and three years with Immigration and Customs Enforcement. I completed the U.S. Border Patrol Academy and DEA Basic Agent Academy, and I received training in the investigation of offenses involving controlled substances. As a Special Agent of the DEA, my duties and responsibilities

include conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18, of the United States Code.

3. I am currently assigned to the Cincinnati Resident Office of the DEA. I received specialized training from the DEA, including the 18-week Basic Agent Training course. This training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate drug violations.

4. As a DEA Agent, I have participated in approximately fifteen criminal investigations and in the execution of numerous search warrants seeking evidence of violations of the Federal Controlled Substances Act (Title 21, of the United States Code). These warrants covered the search of locations to include: residences of drug traffickers and their co-conspirators/associates, drug manufacturing operations, stash houses used as storage and distribution points for controlled substances, as well as the search of Facebook profiles, e-mail accounts, and mobile telephones. I am working closely on this investigation with TFO Chad Whitford and TFO Timothy Andrews.

5. Facts set forth in this affidavit are based upon personal knowledge derived from my participation in this investigation and upon information presented to me by other law enforcement officers involved in this case. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. One purpose of applying for this warrant is to determine with precision any Target Cellular Devices' location from devices used by Derrick BRYANT. There is reason to believe the Target Cellular Devices are currently located somewhere within this district because BRYANT, the user of the devices, lives in and spends majority of his time in the Cincinnati, Ohio, area. Pursuant to Rule 41(b)(2), law enforcement may locate the Target Cellular Devices outside the district provided the device is within the district when the warrant is issued.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 United States Code, Sections 841(a)(1) and 846 have been committed, are being committed, and will be committed by BRYANT and others yet to be identified. There is also probable cause to believe that the location of the Target Cellular Devices will constitute evidence of those criminal violations, including leading to the identification of other individuals who are engaged in the commission of these offenses and identifying locations where the target engages in criminal activity.

8. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

9. In August of 2018, the DEA Cincinnati Resident Office began an investigation into a fentanyl/heroin distribution ring operating in and around the Cincinnati, Ohio area. Through investigative efforts, Derrick L BRYANT was identified as a distributor of fentanyl/heroin.

10. In August of 2018 Task Force Officer Whitford conducted a criminal history check on BRYANT and found that he has a history of eight (8) felony arrests, 7 of which regard narcotics offenses.

11. In August of 2018, Task Force Officers Andrews and Whitford met with DEA Confidential Source 1 (hereinafter "CS1"). CS1 agreed to cooperate with members of the DEA for monetary compensation. CS1 has in the past provided information proven to be accurate and whose reliability has been established to agents' satisfaction. During the meeting, CS1 stated that Derrick Lamar BRYANT has been purchasing high-value vehicles over the past few years from Dixie Imports located at 4597 Dixie Highway, Fairfield, Ohio 45014. Several vehicles purchased by BRYANT have been cash purchases, and at least one vehicle was purchased by BRYANT, but was recorded in another individual's name. Moreover, all of the vehicles identified by case agents are registered at different addresses. CS1 believes BRYANT is laundering the proceeds from the sales of illegal narcotics through Dixie Imports, Inc., by purchasing high-value vehicles, some of which for large amounts of cash. CS1 stated the most recent transaction with cash was conducted in May of 2018, when BRYANT arrived with a large amount of cash, purchased a vehicle, and then registered the vehicle under the name of an acquaintance of his. Furthermore, Mustapha Ait MOUHA, a/k/a "Adam," owner of Dixie Imports, recently purchased a 2017 GMC Sierra truck from an auto auction in Detroit, Michigan. Shortly after purchasing the vehicle, MOUHA provided a temporary Ohio registration tag G774524 to Derrick BRYANT for the vehicle. At an unknown time or date BRYANT flew to the Detroit, Michigan area, picked up the vehicle and drove it back to the Cincinnati, Ohio area. TFO Andrews conducted a search of the temporary registration through Law Enforcement indices. The search revealed that this vehicle was registered to BRYANT, at 2545 Hackberry Street, Cincinnati Ohio 45231.

12. On August 28th, 2018, CS1 informed case agents that BRYANT dropped off a new, enclosed trailer at the lot of Dixie Imports South, Inc., a secondary car lot owned by Mustapha Ait MOUHA. This car lot is open to the public. CS1 stated that the trailer was put in a location on the lot that is out of view of the security cameras which oversee the car lot. On August 28th, 2018, at approximately 9:00 p.m., case agents utilized Dep. Rhoads and K-9 "Kaiser" to conduct an open air sniff of the enclosed trailer. During the open air sniff, K-9 Kaiser gave a positive indication for the presence of narcotics emitting from the trailer.

13. On August 29th, 2018, a second DEA Confidential Source (hereinafter "CS2") contacted TFO Andrews. CS2 has agreed to cooperate with members of the DEA for judicial consideration, and has in the past provided information proven to be accurate and whose reliability has been established to agents' satisfaction. Case agents met with CS2 to conduct a debriefing. During the debriefing, CS2 stated that a shipment of heroin had just arrived in Cincinnati, Ohio and that BRYANT was in need of a secure location at which to store the heroin. Based on the facts in this affidavit it is TFO Andrews' belief that the enclosed trailer may have been utilized to transport the shipment of heroin into Cincinnati, Ohio.

14. In late August 2018, CS1 contacted TFO Andrews in regard to Andre ROBINSON. CS1 stated that Mustapha Ait MOUHA recently hired ROBINSON as a sales representative for Dixie Imports South. CS1 provided TFO Andrews with information obtained directly from ROBINSON, wherein ROBINSON stated that he (ROBINSON) and BRYANT were friends.

15. In late August 2018, CS2 met with ROBINSON at Dixie Imports South. During that meeting, CS2 had general conversation with ROBINSON about possibly purchasing a vehicle from the lot at Dixie Imports South.

16. In early September 2018, CS1 contacted Task Force Officer Andrews in regard to the enclosed trailer parked in the lot of Dixie Imports South. According to CS1, an unknown subject operating a full-size SUV (later determined to be registered to Willie PARNELL, believed to be BRYANT's half-brother) entered the lot of Dixie Imports South and removed the previously-referenced enclosed trailer. A few days later, CS1 contacted TFO Andrews. CS1 discussed a recent conversation with Willie PARNELL, who according to the CS and by his own admissions had arrived at the lot of Dixie Imports South with the enclosed trailer. CS1 stated that the trailer was being pulled by BRYANT'S 2017 GMC truck (CS1 believes that this vehicle is also owned by BRYANT). PARNELL stated that he had removed the trailer from the lot and used the trailer to move BRYANT's 2013 McLaren to BRYANT's secondary residence in Helena, Georgia. CS1 has observed BRYANT operating the 2013 McLaren in the past, and states that BRYANT has possession of the 2013 McLaren.

17. On September 18th, 2018, CS2 contacted Task Force Officer Whitford and stated that a meeting with Andre ROBINSON (who agents believe is a co-conspirator of BRYANT's) would be taking place at Bargo's bar and grill restaurant in Fairfield, Ohio, at approximately 9:00 p.m. that evening.

18. At approximately 9:51 p.m., CS2 contacted Task Force Officer Whitford and stated that ROBINSON requested that CS2 obtain two money counter machines. ROBINSON explained to CS2 that he (ROBINSON) has two acquaintances who are currently distributing heroin and that they need money counters to count the proceeds from illegal narcotics distribution: large sums of U.S. Currency.

19. CS2 also advised that ROBINSON recently acquired a delivery van and has obtained employment at a local delivery company. Furthermore, ROBINSON inquired about shipping

companies, such as FedEx, and asked CS2 if the packages are checked for contraband. CS2 believes ROBINSON will start utilizing his (ROBINSON's) delivery van as a means to deliver bulk amounts of narcotics and/or the proceeds from the sales of narcotics.

20. On September 19th, 2018, at approximately 8:28 p.m., CS2 placed an outgoing and recorded cellular call to 513-432-1795 (Andre ROBINSON) to discuss the delivery of a money counter. During the recorded call, CS2 informed ROBINSON it would be a few days until CS2 could get the "machine" to ROBINSON. During the call, ROBINSON acknowledged the delay and both CS2 and ROBINSON agreed to speak at a later date.

21. On September 24th, 2018, at approximately 4:25 p.m., Task Force Officer Whitford met with the Honorable Stephanie K. Bowman, U.S. Magistrate Judge, Southern District of Ohio, and presented one search warrant authorizing the use of a DEA owned GPS equipped money counter (ser# 1 i101 4473 16119). Magistrate Judge Bowman authorized that search warrant.

22. On September 26th, 2018, members of the DEA conducted an undercover operation utilizing CS2. During this operation, CS2 delivered the money counter to Andre ROBINSON. On September 26th, 2018, at approximately 10:00 p.m., CS2 - followed by Task Force Officer Whitford and Task Force Officer Andrews - met with ROBINSON at the Bargo's bar and grill restaurant located in Fairfield, Ohio. This meeting between CS2 and ROBINSON was recorded. At approximately 10:07 p.m., Task Force Officers Whitehouse and DEA SA Reder observed CS2 arrive at the parking lot of the restaurant. As soon as CS2 exited the vehicle, CS2 was greeted by ROBINSON. CS2 exited the vehicle and retrieved the box containing the money counter and placed it into ROBINSON's vehicle. CS2 stated that, upon arrival at the restaurant [CS2] exited the vehicle and met with ROBINSON and then provided the money counter to ROBINSON, which was placed into ROBINSON's vehicle. CS2 stated ROBINSON and CS2 went into the restaurant

and engaged in conversation. During the conversation, ROBINSON and CS2 were discussing who would utilize the counter machine, and ROBINSON made mention of a male who has a McLaren and Rolls Royce and has a lot of money as the person who will use "the machine." Case agents are aware that BRYANT owns both of these cars.

23. On September 28th, 2018, at approximately 7:13 p.m., a batch report[1] was created (00122-0136-000), which displays U.S. Currency being processed through the [DEA-owned] money counter. At approximately 7:44 p.m., the money counter displayed a physical address of 11922 Hamilton Ave., Cincinnati, Ohio, 45231. This is the physical address of the Prime Cuts Barber & Beauty Salon owned by Derrick BRYANT.

24. On September 29th, 2018, at approximately 7:32 a.m., the money counter displayed an address of 9812 Beech Drive, Cincinnati, Ohio, 45231. This is the known residence of Derrick BRYANT. Case agents believe, through covert electronic surveillance and recorded calls made between the CS and ROBINSON, ROBINSON transported the money counter to 11922 Hamilton Ave., Cincinnati, Ohio and then provided BRYANT with the money counter. Once the money counter was observed by BRYANT at the barber shop, it is believed that BRYANT took possession of the money counter and transported it to his (BRYANT's) residence, located at 9812 Beech Drive, Cincinnati, Ohio.

25. In October 2018, Task Force Officer Andrews conducted a criminal history check on ROBINSON, which revealed six (6) felony arrests, two (2) of which regarded narcotics offenses.

26. On October 3, 2018, Task Force Officer Whitehouse spoke with Detective Flick of the West Chester Police Department. Detective Flick advised Task Force Officer Whitehouse that he (Detective Flick) had conducted a Confidential Source debrief over the past twelve months.

---

[1] Batch reports show the denominations for, and report the serial number of, each bill run through the money counter.

According to Det. Flick, this Confidential Source (hereinafter "CS3") has in the past provided information proven to be accurate and whose reliability is established to Det. Flick's satisfaction. During the debriefing conducted by Det. Flick, CS3 stated that he/she was purchasing cocaine from Derrick BRYANT. CS3 stated that he/she had in the past purchased multiple ounces of cocaine at a time from BRYANT. Typically, CS3 would meet with BRYANT at a barber shop (Prime Cuts) and inform BRYANT how much cocaine CS3 wished to purchase, while getting a haircut. Later CS3 would then meet with BRYANT in a residential area to conduct the final transaction of the cocaine. CS3 stated that BRYANT was in possession of anywhere from 5-10 kilograms of cocaine at a time and would store the kilograms in a deep freezer in his (BRYANT's) residence. CS3 also stated BRYANT would not utilize a cellular telephone to discuss drug trafficking activities.

27. On October 29th 2018, at approximately 9:30 p.m., CS2, followed by Task Force Officer Whitford and Task Force Officer Andrews, met with ROBINSON at the Bargo's bar and grill restaurant located in Fairfield Ohio. This meeting between CS2 and ROBINSON was recorded. At approximately 9:40 p.m., Task Force Officers Whitehouse and Vanover observed CS2 arrive at the parking lot of the restaurant. At approximately 9:46 p.m., Task Force Officers Whitehouse and Vanover observed ROBINSON arrive at the lot, driving a silver 2014 four door Infiniti bearing Ohio temporary registration G880215. As soon as CS2 exited the vehicle, CS2 was greeted by ROBINSON, who was walking away from the silver four door Infiniti. CS2 exited the vehicle, retrieved the box containing the money counter, and placed it into ROBINSON's 2014 silver Infiniti. Upon successful completion of the delivery of the [DEA] money counter, case agents debriefed CS2, who confirmed that upon arrival at the restaurant, [CS2] exited a vehicle and met with ROBINSON, then provided the money counter to ROBINSON, which was placed into

ROBINSON's vehicle. CS2 further stated that they (ROBINSON and CS2) stood in the parking lot and engaged in conversation, during which conversation they discussed who would utilize the money counting machine. ROBINSON made mention of a male who would like the money counter to use in the Dayton area or the Atlanta area, which are locations BRYANT is known to visit.

28. On November 2, 2018, TFO Whitford reviewed data on a court-authorized GPS tracker installed on BRYANT's black 2017 GMC truck. TFO Whitford noted that at approximately 9:42 a.m., the data shows his GMC truck arriving at the Northern Kentucky Cincinnati International Airport (CVG). TFO Whitford contacted TFO Eli Sautter and TFO Rick Bernecker with the DEA airport interdiction group for assistance. TFO Sautter observed BRYANT in the check-in area and learned BRYANT utilized valet parking for his GMC truck. TFO Sautter learned through a confidential source (hereinafter "CS4") that BRYANT was flying to Atlanta, Georgia. BRYANT traveled on Frontier Airlines - Flight #1485, and departed CVG at 11:36 a.m. CS4 has provided reliable information in the past, continues to provide information in exchange for monetary compensation, and has established reliability to agents' satisfaction. CS4 further explained to TFO Sautter that BRYANT had utilized Golden513513@GMAIL.COM to book the Frontier Airlines flight. CS4 also provided TFO Sautter with a telephone number BRYANT listed while reserving the flight; this telephone number was confirmed by TFO Whitford to be a phone number with which agents were familiar. On November 4, 2018, at approximately 10:26 a.m., an electronic notification from the court-authorized GPS tracker on BRYANT's GMC truck alerted TFO Whitford that BRYANT's truck was departing the area of CVG airport.

29. On November 5, 2018, at approximately 11:59 a.m., court-authorized electronic surveillance on BRYANT's GMC truck indicated the vehicle traveled to 842 W. High Street, Lexington, Kentucky. At approximately 12:54 p.m., it was noted that BRYANT's truck departed

842 W. High Street, Lexington, Kentucky, and traveled back to Cincinnati, Ohio. TFO Whitford contacted Detective M. Evans of the Lexington Police Department's Narcotics Enforcement Unit and provided Detective Evans with the address where BRYANT's truck was parked. Detective Evans was familiar with the area and informed TFO Whitford that two known subjects, who he believes to be involved in the distribution of cocaine and marijuana, currently reside at 839 W. High Street, Lexington, Kentucky. Detective Evans further explained that parking on the street is only authorized on the even-numbered side. (TFO Whitford believes this is why the GPS tracker on BRYANT's GMC truck displayed a physical address of 842 W. High Street, Lexington, Kentucky.)

30. On November 9, 2018, TFO Whitford and TFO Andrews debriefed CS3. During the debrief, CS3 stated that BRYANT possessed and utilized multiple telephones in conjunction with his drug trafficking business.

31. Given the consistency of the information provided by both DEA Confidential Sources, the West Chester Police Department's Confidential Source, and Andre ROBINSON's statements to DEA CS2 about the vehicles and large amount of money, the fact that all three CS debriefings were conducted independently and upon information and belief those CS' have no known contact with each other, TFO Andrews submits that all three CS' have provided accurate and reliable information about BRYANT'S Drug Trafficking Organization (DTO). Moreover, BRYANT appears to have unexplainable wealth (a number of high-cost vehicles and residences currently owned by BRYANT). TFO Andrews has not observed any routine employment by BRYANT, other than ownership of Prime Cuts Barber Shop. During periodic surveillance conducted at the barber shop, case agents have noted a low amount of customers during business hours. Further, ROBINSON's association with BRYANT (ROBINSON delivered the first money counter to

Prime Cuts and then the counter was then transported to BRYANT'S residence, with a person matching BRYANT's description as the reported recipient). Over the last month, BRYANT has been to the Atlanta, Georgia, area at sporting events, as well as purchased the GMC pickup truck for approximately $65,000.00 cash from Dixie Imports, Inc.

32.     Based on the recited facts within, I believe that BRYANT, ROBINSON and others as-yet unidentified are distributing narcotics and engaging in a conspiracy to possess and to distribute narcotics, specifically, heroin, a Schedule I controlled substance, in violation of 21 U.S.C. Sections 846 and 841; and are also conducting financial transactions and conspiring to conduct financial transactions with the proceeds of those criminal offenses (which are "specified unlawful activities" as described in 18 U.S.C. Section 1956) with intent to conceal the nature/location/source/ownership/control of the funds or to promote the drug trafficking or to avoid transaction reporting requirements, in violation of 18 U.S.C. Section 1956 and 1957. Additionally, based on my training, experience, and conversation with other law enforcement officers, I know it is common for drug traffickers to utilize multiple telephones in order to communicate to other members in the DTO or to customers. I believe BRYANT utilizes cellular devices, both known and unknown to law enforcement, in order to conduct his illicit drug trafficking and launder the drug proceeds.

## MANNER OF EXECUTION

33.     In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

34. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Cellular Devices or receiving signals from nearby cellular devices, including the Target Cellular Devices. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Devices and thereby prompt it/them to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Cellular Devices and use that information to determine the Target Cellular Devices' locations, even if located inside a house, apartment, or other building.

35. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Devices, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Devices, and law enforcement will limit collection of information from devices other than the Target Cellular Devices. To the extent that any information from a cellular device other than the Target Cellular Devices is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Devices from all other cellular devices.

## AUTHORIZATION REQUEST

36. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

37. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cellular Devices would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and/or flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

38. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Devices outside of daytime hours.

39. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

40. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

_____
David A. Zummach
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on 28 day of November 2018.

_____
HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location and identification of target cellular devices used by Derrick BRYANT.

This technique may be used at the following locations: 2545 Hackberry Street, Cincinnati Ohio 45231, 11922 Hamilton Ave., Cincinnati, Ohio, 45231, 9812 Beech Drive, Cincinnati, Ohio, 45231; and any other locations where officers have reason to believe that Derrick BRYANT is present pursuant to active pen register information.

## **ATTACHMENT B**

Pursuant to an investigation of Derrick BRYANT for a violation of 21 United States Code, Sections 841(a)(1) and 846, this Warrant authorizes the officers to whom it is directed to determine the location and identification of the target cellular devices identified in Attachment A by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night.

Absent further order of a court, law enforcement will make no affirmative investigative use of any identifiers collected from cellular devices other than the Target Cellular Device, except to identify the Target Cellular Device and distinguish it from the other cellular devices. Once investigators ascertain the identity of the Target Cellular Device, they will end the collection, and any information collected concerning cellular devices other than the Target Cellular Device will be deleted.

This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).